UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
:
**DONALD WILLIAMS**,
:
                          Plaintiff, :   **MEMORANDUM DECISION AND ORDER**
:
             – against – :   20-CV-5113 (AMD) (LB)
:
**THE STATE OF NEW YORK, THE CITY OF NEW YORK, THE NEW YORK CITY POLICE DEPARTMENT, SENATOR JAMES SANDERS, HAYDEN HORSHAM AND POLICE OFFICER DAWN HENLEYWARREN,** *individually and in her official capacity as a New York City Police Officer*,
:
:
:
:
:
:
                        Defendants. :
------------------------------------------------------------------ X

**ANN M. DONNELLY**, United States District Judge:

On October 22, 2020, the plaintiff filed this *pro se* action against the City of New York, Senator James Sanders and Hayden Horsham, alleging violations of his constitutional rights pursuant to 42 U.S.C. § 1983. On November 9, 2020, the plaintiff paid the $400 filing fee to commence this action. On November 23, 2020, I identified deficiencies in the plaintiff's pleadings and dismissed the complaint but granted him leave to file an amended complaint within 30 days. (ECF No. 6.)

On February 17, 2021, the plaintiff filed an amended complaint adding Officer Dawn Henleywarren, the New York City Police Department and New York State as defendants. (ECF No. 9.) Since then, the plaintiff has sought leave to file multiple amended complaints, requests that I have granted in light of his *pro se* status. (*See* ECF Nos. 10, 13, 20.) The plaintiff filed his

most recent amended complaint on September 13, 2021, which he refers to as the "third amended complaint." (ECF No. 32.) I now treat that complaint as the operative pleading.

In his amended complaint the plaintiff alleges that the defendants are liable for false arrest, malicious prosecution, municipal liability, and violations of the First, Fourth, Fifth, Sixth and Fourteenth Amendments. The plaintiff also brings a claim for negligent supervision and state law claims of defamation and fraud. (*Id.* at 2-3.)

The defendants move to dismiss the amended complaint. For the reasons that follow, the defendants' motions are granted.

## BACKGROUND

On October 4, 2017, the plaintiff, a resident of Rockaway, Queens, wrote the following letter addressed to the offices of State Senator James Sanders and City Councilman Donovan Richards:

> If I don't get any work soon or get back with the elevator division im going to blow that fake as racatering Fraudlent Ocean bay Apartment Bull-Shit Sky High, you Just Try Me. (Im going to bring Jaha Esquire into this Bull-Shit)

(ECF Nos. 32-1, 41-2.)

Before he mailed the letter, the plaintiff asked someone, whom he does not name, to proofread the letter. This person told the plaintiff that the word "blow" did not sound right, so the plaintiff used whiteout to obscure it. (ECF No. 56 at Ex. B.) The plaintiff alleges that Hayden Horsham, Senator Sanders's district manager, opened the letter and removed the whiteout, which revealed the word "blow." (ECF No. 32-1 at 2.)

On October 23, 2017, police officers from the 101st precinct arrested the plaintiff at the Far Rockaway post office. (ECF No. 32-1 at 2.) After the officers took him to the 101st precinct, Officer Henleywarren drove him to the 113th precinct in Jamaica, Queens. (*Id.*)

The plaintiff alleges that Hayden Horsham told Officer Henleywarren the plaintiff had made a terrorist threat. (ECF No. 56 at 2.) Officer Henleywarren questioned the plaintiff at the 113th precinct and asked about the letter to Senator Sanders. (*Id.*) The plaintiff did not deny that he sent the letter to Senator Sanders, but explained he was not threatening to blow up the Ocean Bay apartments if the Senator did not get him a job; rather he was threatening to implicate the Senator in a corruption scheme involving construction contracts at the apartments. (*Id.*) The plaintiff also told Officer Henleywarren that U.S. Attorney Preet Bharara was investigating Senator Sanders. (*Id.*) According to the criminal court complaint dated October 24, 2017, which the plaintiff attached to his opposition, the plaintiff told Officer Henleywarren, "[W]hy would I say I'm going to blow up the department, I'm threatening to expose them for what they do." (ECF No. 56 at Ex. B.)

On October 24, 2017, the plaintiff was charged with Coercion in the Second Degree and Aggravated Harassment in the Second Degree. (*Id.*) The plaintiff states he "was originally offered a 10 years sentence of incarceration for these charges in arraignment, but steadly claimed his innocents." (ECF No. 32-1 at 3.) The plaintiff was then taken to Rikers Island and held for 14 days until he posted bail on November 4, 2017. (ECF No. 32-1 at 3.) The charges against the plaintiff were dismissed on October 24, 2018. (ECF No. 56 at Ex. B).[1]

## LEGAL STANDARD

A claim is "properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate" the claim. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Rule 12(b)(6) dismissal is

---

[1] According to the plaintiff the charges were dismissed because there was "no probable cause." (ECF No. 32-1 at 3.) The certificate of disposition he submitted, however, does not reflect the reason for the dismissal. (ECF No. 56 at Ex. B.)

3

warranted when the complaint does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Specifically, the complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible on its face when the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court reviewing a motion to dismiss under either Rule 12(b)(1) or 12(b)(6) must accept as true the complaint's factual allegations and draw all reasonable inferences in the non-moving party's favor. *See Town of Babylon v. Fed. Hous. Fin. Agency*, 699 F.3d 221, 227 (2d Cir. 2012). Moreover, the Court must construe a *pro se* complaint "liberally" and interpret it to "rais[e] the strongest arguments [it] suggest[s]." *McCray v. Lee*, 963 F.3d 110, 116 (2d Cir. 2020) (quoting *Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013)). "This is especially true when dealing with *pro se* complaints alleging civil rights violations." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 146 (2d Cir. 2002).

While the plaintiff bears the burden of proving that subject matter jurisdiction exists, *Makarova*, 201 F.3d at 113, the defendants must establish that dismissal under Rule 12(b)(6) is warranted. *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003), *abrogation on other grounds recognized by Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 (2d Cir. 2019).

Courts considering a motion to dismiss pursuant to Rule 12(b)(6) may rely only on the complaint itself, documents attached to the complaint or incorporated by reference and documents upon which the complaint relies. *Targum v. Citrin Cooperman & Co., LLP*, No. 12-CV-6909, 2013 WL 6087400, at *3 (S.D.N.Y. Nov. 19, 2013). "Allegations in the complaint

4

that are contradicted by more specific allegations or documentary evidence are not entitled to a presumption of truthfulness." *Id.* (internal quotation marks and citations omitted).

## DISCUSSION

I. **Consideration of Extrinsic Materials**

a. **The Court will consider supplemental facts and materials in the plaintiff's opposition.**

The plaintiff attached multiple exhibits to his opposition to the defendants' motions to dismiss, including the criminal complaint Officer Henleywarren signed on October 24, 2017. (ECF No. 56 at Ex. B.) In light of the special solicitude afforded *pro se* litigants, it is appropriate for the Court to consider these documents in evaluating the plaintiff's amended complaint. *See Cuffee v. City of New York*, No. 15-CV-8916, 2017 WL 1232737, at *4 (S.D.N.Y. Mar. 3, 2017) ("[T]he mandate that a *pro se* plaintiff's complaint be construed liberally makes it appropriate for the court to consider the factual allegations in a *pro se* plaintiff's opposition materials to supplement the allegations in the complaint."); *Sommersett v. City of New York*, No. 09-CV-5916, 2011 WL 2565301, at *3 (S.D.N.Y. June 28, 2011) ("[W]here a pro se plaintiff has submitted other papers to the Court, such as legal memoranda, the Court may consider statements in such papers to supplement or clarify the plaintiff's pleaded allegations.").

b. **The Court will consider some of the material in the defendants' motions that the plaintiff incorporates by reference in his amended complaint.**

The City Defendants attached exhibits to their motion, including a copy of the letter the plaintiff sent to Senator Sanders, and a transcript of the plaintiff's testimony at a Rule 50-h hearing. (ECF Nos. 41-1, 41-3.) I consider the letter to Senator Sanders as incorporated by reference because the plaintiff cites the letter six times in the amended complaint and quotes the body of the letter in its entirety. (*See* ECF No 32-1); *see also Johnson v. Levy*, 812 F. Supp. 2d 167, 177 (E.D.N.Y. 2011) ("To be incorporated by reference, the complaint must make a clear,

5

definite and substantial reference to the documents[.]") (internal quotation marks and citations omitted).

Citing *Harley v. City of New York*, No. 14-CV-5452, 2016 WL 552477, at *3 (E.D.N.Y. Feb. 10, 2016), the City Defendants ask that I take judicial notice of the plaintiff's Rule 50-h testimony as "a matter of public record whose contents are not subject to reasonable dispute." But Harley referred to the 50-h testimony in the complaint; the plaintiff does not mention the hearing in the amended complaint or in any of his submissions to the Court. "A court may also take judicial notice of court documents and other publicly available materials of which plaintiff had actual notice and relied upon in framing his or her complaint." *Lowery v. City of New York*, No. 10-CV-7284, 2014 WL 2567104, at *3 (S.D.N.Y. June 6, 2014). Under the particular circumstances of this case, and in view of the plaintiff's *pro se* status, I decline to take judicial notice of the testimony.

## II. The Plaintiff's Claims Against the New York State Defendants

### a. The Court does not have subject matter jurisdiction over the plaintiff's claims against New York State and Senator Sanders and Hayden Horsham in their official capacities.[2]

The Eleventh Amendment "bar[s] federal suits against state governments by a state's own citizens." *Woods v. Rondout Valley Central Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006); *see also KM Enters., Inc. v. McDonald*, 518 F. App'x 12, 13 (2d Cir. 2013) ("As a general matter, states enjoy sovereign immunity from suit in federal court, even if the claim arises under federal law."); *Boyland v. Wing*, 487 F. Supp. 2d 161, 180 (E.D.N.Y. 2007). This bar precludes "suits that seek either money damages, or injunctive relief" against the state. *McGinty v. New*

---

[2] In his opposition, the plaintiff concedes "the state of new york cannot be sued under 42 USC 1983 and the parties of James Sanders and Haydon Horsham needed to be sued officially and 'individually[.]'" (ECF No. 56 at 1.) Nevertheless, I address these claims in an excess of caution.

6

*York*, 251 F.3d 84, 91 (2d Cir. 2001) (internal citations omitted).  Moreover, Eleventh Amendment immunity extends "beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state."  *Woods*, 466 F.3d 232 at 236 (internal quotation marks and citations omitted); *see also Walker v. City of Waterbury*, 253 F. App'x 58, 60 (2d Cir. 2007) (summary order) (Eleventh Amendment immunity applies to state agencies); see also *Corrado v. N.Y. Office of Temp.*, No. 15-CV-7316, 2016 WL 3181128, at *3 (E.D.N.Y. June 2, 2016).

The plaintiff's Section 1983 claims against the State of New York and Senator Sanders and Hayden Horsham in their official capacities are barred by the doctrine of sovereign immunity.  *See Wagschal v. Skoufis*, 442 F. Supp. 3d 612, 623 (S.D.N.Y. 2020) (Eleventh Amendment barred § 1983 claim for monetary damages against state senator in his official capacity).  The plaintiff's claims are not subject to abrogation by Congress or waiver by the state.  "New York has not consented to § 1983 suits in federal court, and § 1983 was not intended to override a state's sovereign immunity[.]"  *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) (internal citations omitted).  Accordingly, these claims must be dismissed pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

b. **The plaintiff does not state a claim against Senator Sanders and Hayden Horsham in their individual capacities.**

The plaintiff also brings Section 1983 claims against Senator Sanders and Hayden Horsham in their individual capacities.  "Section 1983 provides a cause of action against any person who deprives an individual of federally guaranteed rights 'under color' of state law."  *Filarsky v. Delia*, 566 U.S. 377, 383 (2012).  "[T]o state a claim under Section 1983, a plaintiff must allege (1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws, and (2) that the deprivation was 'committed by a person acting under

7

the color of state law.'" *Harrison v. New York*, 95 F. Supp. 3d 293, 321 (E.D.N.Y. 2015) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

The State Defendants persuasively argue the plaintiff does not state a claim against Senator Sanders and Hayden Horsham in their individual capacities because he does not sufficiently allege they acted under color of state law. (ECF 38 at 16.) State officials like Senator Sanders and Hayden Horsham do not act under color of state law merely because they are public officials. Instead, "[a]n official 'acts under color of state law' for Section 1983 purposes when the official exercises a power 'possessed by virtue of state law and made possible only because the wrongdoer is cloaked with the authority of state law.'" *Colombo v. O'Connell*, 310 F.3d 115, 118 (2d Cir. 2002) (quoting *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997)). A court determining whether state officials acted under color of state law "should look to the overall nature of the defendant's conduct, and not merely her duty status, to determine if she was acting under the color of state law." *Rae v. Cnty. of Suffolk*, 693 F. Supp. 2d 217, 228 (E.D.N.Y. 2010) (citing *Pitchell v. Callan*, 13 F.3d 545, 548 (2d Cir.1994)) (defendant police officer was not acting under color of law when she submitted a criminal complaint to fellow officers accusing her husband of raping her because she was acting merely as a "civilian complainant," and did not exercise her powers as a police officer).

As for what Hayden Horsham and Senator Sanders are alleged to have done, the amended complaint states only that Hayden Horsham opened the plaintiff's letter, removed the whiteout obscuring the word "blow" and gave a copy of the letter to Officer Henleywarren; the plaintiff also suggests that Hayden Horsham told Officer Henleywarren the plaintiff made a terrorist threat. (ECF No. 32-1 at 2.)

8

The State Defendants do not dispute that Senator Sanders and Hayden Horsham were state officials when the plaintiff was arrested. Instead, they point out that when Mr. Horsham reported the plaintiff's threatening letter to Officer Henleywarren, he was not exercising power that he had only because he and Senator Sanders "were cloaked with the authority of state law." *See Colombo*, 310 F.3d at 118.

Indeed, a person does not have to be a public official to report a potential crime to the police. *Stewart v. Victoria's Secret Stores, LLC*, 851 F. Supp. 2d 442, 446 (E.D.N.Y. 2012) ("Merely providing information to law enforcement, even if that information is false or mistaken, does not render the supplier of information a state actor.") In *Savarese v. City of New York*, 547 F. Supp. 3d 305 (S.D.N.Y. 2021), the court held that an on-duty traffic agent who reported a crime to the police was not acting under color of state law because the traffic agent's conduct was "no different from that of an ordinary citizen but for the fact that [the traffic agent] happened to possess a badge." *Id.* at 338. The same reasoning applies here. Hayden Horsham could have reported the plaintiff's threatening letter to the police even if he was not Senator Sanders's district manager. Similarly, if Senator Sanders was a private employer, he could have directed Hayden Horsham to report the letter.

In the amended complaint, the plaintiff does not explain how Senator Sanders or Hayden Horsham alerted the police to the plaintiff's letter, much less allege that either defendant "invoke[d] or ulitize[d] any state authority." *Savarese*, 574 F. Supp. 3d at 339. The amended complaint alleges only that "Plaintiff was told by P.O. Dawn Henley Warren that Senator Sanders and Hayden Horsham manager, state that plaintiff made a terrorist threat[.]" (ECF No. 32-1 at 2.) *See Fielder v. Incandela*, 222 F. Supp. 3d 141 (E.D.N.Y. 2016) ("Liability under Section 1983 may attach where an off-duty officer 'invokes the real or apparent power of the

9

police department.'") (internal quotation marks and citations omitted). Since the plaintiff has not alleged that either Senator Sanders or Hayden Horsham acted under color of state law, his Section 1983 claims against them are dismissed in their entirety.

## III. The Plaintiff's Claims Against the New York City Defendants

### a. The plaintiff's false arrest claim fails because Officer Henleywarren had probable cause to arrest him.[3]

The plaintiff's false arrest claim must be dismissed because Officer Henleywarren had had probable cause to arrest him. "[T]he existence of probable cause is an absolute defense to a false arrest claim." *Jaegly v. Couch*, 439 F.3d 149, 152 (2d Cir. 2006). "Courts may grant a pre-answer motion to dismiss on the basis of an affirmative defense where such defense appears on the face of the complaint." *Silver v. Kuehbeck*, 217 Fed. App'x 18, 22 (2d Cir. 2007) Here, the facts establishing probable cause are included in the complaint and the supporting materials the plaintiff submitted, including the letter the plaintiff sent to Senator Sanders. (ECF No. 41 at 16.) The plaintiff concedes that he wrote the letter, which he quotes verbatim in the complaint, and that he sent it to the Senator's office. (ECF No. 32-1 at 2-3.) The criminal complaint, which the plaintiff included in his opposition, also corroborates what the plaintiff describes in his complaint. (ECF No. 56 at Ex. B.)

"An officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a

---

[3] A Court may determine probable cause as a matter of law "if there is no dispute as to the pertinent events and the knowledge of the officers." *Bishop v. City of New York*, 518 F. App'x 55, 56 (2d Cir. 2013) (internal quotation marks and citation omitted). In this case, the plaintiff does not dispute the events leading to his arrest. According to the amended complaint, "Senator Sanders and Hayden Horsham manager, stated that plaintiff made a terrorist threat[.]" In the amended complaint, the plaintiff states, "Plaintiff was shown a defaced letter which plaintiff sent the Senator that had white out (now) scratched out under a pacific word (Blow)[.]" (ECF No 32-1 at 2-3.)

10

crime." *Jaegly*, 439 F.3d at 152 (internal quotation marks and citations omitted).  In determining whether probable cause existed at the time of the arrest, the Court assesses "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." *Id.* at 153.  Probable cause does not require that an officer have absolute certainty that a suspect is guilty; for that reason, the reviewing court must "consider those facts available to the officer at the time of the arrest and immediately before it." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (internal quotation marks and citations omitted).  While an officer may not ignore "plainly exculpatory evidence," a court must consider the "totality of the circumstances" surrounding the arrest; probable cause is a "fluid concept" that "turn[s] on the assessment of probabilities in particular factual contexts." *Id.* at 395 (internal quotation marks and citations omitted).

As explained above, the plaintiff alleged in the amended complaint that Hayden Horsham reported a "terrorist threat" to Officer Henleywarren and gave her a copy of the plaintiff's letter. (ECF No 32-1 at 2-3.)  Officer Henleywarren was entitled to rely on this in-person report by the "putative victim," who gave her evidence of the alleged crimes.  *See Panetta*, 460 F.3d at 395 ("[I]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." (internal quotation marks and citations omitted)); *see also Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) ("We have previously held that police officers, when making a probable cause determination, are entitled to rely on the victims' allegations that a crime has been committed."); *Thomas v. Culberg*, 741 F. Supp. 77, 80 (S.D.N.Y. 1990) ("Officers have probable cause to arrest if they receive information from some person—normally the putative victim or eyewitness—who it seems

11

reasonable to believe is telling the truth." (quoting *Daniels v. United States*, 393 F.3d 359, 361 (D.C. Cir. 1998) (internal quotation marks omitted)).

The plaintiff argues that both Hayden Horsham and Officer Henleywarren misinterpreted his letter. The plaintiff claims that his threat to "blow that fake as racatering Fraudlent Ocean bay Apartment Bull-Shit Sky High" was a threat to expose Senator Sanders for his participation in a municipal corruption scheme, not to blow up the Ocean Bay Apartments. (*See* ECF No. 56 at Ex. B) ("[W]hy would I say I'm going to blow up the department, I'm threatening to expose them for what they do.").) But in determining whether there was probable cause to arrest the plaintiff, the officer was "neither required nor allowed to sit as prosecutor, judge or jury. [Her] function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." *Krause v. Bennett*, 887 F.2d 362, 372 (2d Cir. 1989).

Thus, the fact that the plaintiff may not have meant to threaten an explosion does not mean that Officer Henleywarren lacked probable cause. Indeed, a reasonable person could very well interpret the letter as a threat. The plaintiff wrote that he was going to "blow that fake as racatering Fraudlent Ocean bay Apartment Bull-Shit Sky High, you Just Try Me[.]" (ECF No. 41-2 at 1.) Surely the language of the letter was "sufficient to warrant a person of reasonable caution in the belief" the plaintiff was guilty of making a terroristic threat.[4] Courts have found probable cause for arrest in similar situations involving bomb threats and other threats of public violence. *See Milo v. City of New York*, 59 F. Supp. 3d 513, 527 (E.D.N.Y. 2014) (probable

---

[4] "A person is guilty of making a terroristic threat when with intent to intimidate or coerce a civilian population, influence the policy of a unit of government by intimidation or coercion, or affect the conduct of a unit of government by murder, assassination or kidnapping, he or she threatens to commit or cause to be committed a specified offense and thereby causes a reasonable expectation or fear of the imminent commission of such offense. It shall be no defense to a prosecution pursuant to this section that the defendant did not have the intent or capability of committing the specified offense or that the threat was not made to a person who was a subject thereof." N.Y. Penal Law § 490.20.

12

cause existed to arrest art teacher who stated "[I]f I had a trench coat and a shotgun, it would be Columbine all over again" even though detectives later determined the teacher lacked the subjective *mens rea* to establish criminal liability); *Castro v. Cnty. of Nassau*, 739 F. Supp. 2d 153, 171-72 (E.D.N.Y. 2010) (probable cause existed to arrest and prosecute plaintiff after a fellow employee identified the plaintiff's voice on a telephone recording of a bomb threat). Officer Henleywarren was not required to consider other explanations for a letter that was threatening on its face.

Officer Henleywarren also had probable cause to arrest the plaintiff for the crime of coercion, also charged in the criminal complaint. (*See* ECF No. 56 at Ex. B). The plaintiff's letter, standing alone, establishes the elements of the crime. N.Y. Penal Law § 135.61(5) ("A person is guilty of coercion . . . when he or she compels or induces a person to engage in conduct which the latter has a legal right to abstain from engaging in . . . [by exposing] a secret or [publicizing] an asserted fact, whether true or false, tending to subject some person to hatred, contempt or ridicule."). That is so even if the officer accepted the plaintiff's explanation that he was threatening to accuse the Senator of corruption if he did not get the plaintiff a job.

**b. Probable cause defeats the plaintiff's malicious prosecution and First Amendment retaliation claims.**

Probable cause to arrest also serves as a complete defense to a claim for malicious prosecution unless the plaintiff can point to post-arrest facts that negate probable cause. *See Kilburn v. Vill. of Saranac Lake*, 413 F. App'x. 362, 364 (2d Cir. 2011) (citing *D'Angelo v. Kirschner*, 288 F. App'x 724, 726 (2d Cir. 2008)); *Coyle v. Coyle*, 354 F. Supp. 2d 207, 213 (E.D.N.Y. 2005), *aff'd* 153 F. App'x 10 (2d Cir. 2005) (quoting *Dukes v. City of New York*, 879 F. Supp. 335, 342 (S.D.N.Y. 1995)). Probable cause may dissipate between an arrest and the initiation of a prosecution where "the groundless nature of the charges [is] made apparent by the

discovery of some intervening fact." *Deanda v. Hicks*, 137 F. Supp. 3d 543, 574 (S.D.N.Y. 2015) (citing *Kinzer v. Jackson*, 316 F.3d 139, 144 (2d Cir. 2003)).

In this case, the plaintiff identifies no post-arrest facts that negate probable cause. When Officer Henleywarren interviewed him at the 113th precinct, the plaintiff admitted he sent the threatening letter to Senator Sanders. (ECF No. 56 at 2.) As explained above, the officer was not obligated to credit his claim that he was not planning to blow up an apartment building. *See Milo*, 59 F. Supp. 3d at 527. As also explained above, the plaintiff's explanation that he was threatening to expose incriminating information about Senator Sanders if the Senator did not help him secure employment gave Officer Henleywarren probable cause for a separate crime— coercion. (ECF No. 56 at Ex. B.)

The plaintiff also alleges that Officer Henleywarren "failed to attain to find out if the letter that was sent to senator James Sanders office was in the arm length of 'freedom of speech' plaintiff first amendment constitutional right." (ECF No. 32-1 at 4.) Construed liberally, this allegation raises a First Amendment retaliation claim. "To plead a First Amendment retaliation claim a plaintiff must show: "(1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citation omitted). However, the existence of probable cause defeats any First Amendment retaliation claim. *Caravalho v. City of New York*, 732 F. App'x 18, 23 (2nd Cir. 2018) ("The existence of probable cause defeats a First Amendment claim premised on the

14

allegation that defendants arrested a plaintiff based on a retaliatory motive."); *see also Meyers v. City of New York*, 812 F. App'x 11, 15 (2d Cir. 2020).[5]

### c. Officer Henleywarren is entitled to qualified immunity.

The plaintiff's claims against Officer Henleywarren are also barred by qualified immunity. "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Furthermore, "qualified immunity is 'an immunity from suit rather than a mere defense to liability.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). The Supreme Court has instructed that "the driving force behind creation of the qualified immunity doctrine was a desire to ensure that insubstantial claims against government officials will be resolved prior to discovery." *Id.* at 231 (internal quotation marks and citations omitted). Therefore, qualified immunity questions should be resolved "at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

#### i. PO Henleywarren had arguable probable cause to arrest the plaintiff.

To establish qualified immunity, the City Defendants need only demonstrate that Officer Henleywarren had "arguable probable cause" to arrest the plaintiff. *Figueroa v. Mazza*, 825 F.3d 89, 100 (2d Cir. 2016) ("In the context of § 1983 actions predicated on allegations of false arrest, [the Second Circuit has held] that an arresting officer is entitled to qualified immunity so long as 'arguable probable cause' was present when the arrest was made." (quoting *Zalaski v. City of*

---

[5] Even in the absence of probable cause, the plaintiff fails to state a First Amendment claim because "threats of violence are not secured by the First Amendment." *Roth v. Farmingdale Pub. Sch. Dist.*, No. 14-CV-6668, 2017 WL 395211, at *16 (E.D.N.Y. Jan. 30, 2017).

15

*Hartford*, 723 F.3d 382, 390 (2d Cir. 2013))); *McKay v. City of New York*, 32 F. Supp. 3d 499, 511 (S.D.N.Y. 2014) ("Similarly, an officer is entitled to qualified immunity against a claim of malicious prosecution if the officer had arguable probable cause to arrest the plaintiff."); *Collins v. City of New York*, 295 F. Supp. 3d 350, 368 (S.D.N.Y. 2018) ("Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation claim on the basis of that same arguable probable cause.")

"[T]he analytically distinct test for qualified immunity is more favorable to . . . officers than the one for probable cause; 'arguable probable cause' will suffice to confer qualified immunity[.] *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004); *see also Walston v. City of New York*, 289 F. Supp. 3d 398, 415 (E.D.N.Y. 2018). In *Figueroa*, the Second Circuit described the arguable probable cause standard as follows:

> A police officer has arguable probable cause if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met. Put another way, an arresting officer will find protection under the defense of qualified immunity unless no reasonably competent officer could have concluded, based on the facts known at the time of arrest, that probable cause existed.

825 F.3d at 100 (internal quotation marks and citations omitted).

As discussed above, the City Defendants have demonstrated that Officer Henleywarren had actual probable cause to arrest the plaintiff both for making a terroristic threat and for coercion. Therefore, the City Defendants also easily satisfy the lower "arguable probable cause standard" necessary to confer qualified immunity on Officer Henleywarren.

### d. The plaintiff fails to state claims under the Fifth, Sixth, and Fourteenth Amendments against Officer Henleywarren.

In addition to his First Amendment retaliation claim, and false arrest and malicious prosecution claims, which sound in the Fourth Amendment, the plaintiff summarily alleges that "Officer Dawn Henley Warren all under the color of law with no warrant and violated plaintiff

16

4,5,6,14,1 amendment constitutional rights." (ECF No. 32-1 at 3.) The plaintiff alleges no additional facts to support these claims, aside from those giving rise to his false arrest, malicious prosecution and First Amendment claims. "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663. Here, the plaintiff does not even bother to recite the elements of his purported Fifth, Sixth and Fourteenth Amendment claims. Accordingly, these claims are dismissed as well. *Mclean v. Cnty. of Westchester*, No. 17-CV-4492, 2018 WL 6329420, at *10 (S.D.N.Y. Dec. 3, 2018) (dismissing claims under the First, Fifth, Sixth and Fourteenth Amendments when it was "entirely unclear which of [the plaintiff's] rights under those Amendments he alleges were violated and how the [cause] of action is distinct from the Plaintiff's other claims").

    e. **The plaintiff does not state a *Monell* claim for municipal liability against the City of New York.[6]**

The defendant fails to state a claim against the City of New York. In order to sustain a claim for relief under 42 U.S.C. § 1983 against municipal defendants like the City of New York, a plaintiff must show the existence of an officially adopted policy or custom that caused injury and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978).

For the reasons previously stated, the plaintiff has not alleged a constitutional violation. Thus, the plaintiff's *Monell* claim fails as a matter of law. *See Johnson v. City of New York*, 551

---

[6] While the plaintiff names the New York City Police Department as a separate defendant, "the NYPD is a non-suable agent of the City." *Jenkins v. City of New York*, 478 F.3d 76, 33 n.19 (2d Cir. 2007) (citing NYC Charter § 396 ("All actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law.")).

17

F. App'x 14, 15 (2d. Cir. 2014) ("Because he has not alleged a valid underlying constitutional deprivation, his claim against New York City pursuant to Monell . . . must also fail.").[7]

## IV. The Plaintiff's State Law Claims

Finally, the plaintiff alleges state law defamation and fraud claims. (ECF No. 32-1 at 3.) Because I have dismissed all of the plaintiff's federal claims, I decline to exercise supplemental jurisdiction over his state law claims. *Luciano v. City of New York*, No. 09-CV-359, 2009 WL 1953431, at *2 (S.D.N.Y. July 2, 2009) ("In addition, where the federal claims are dismissed at an early stage in the litigation, the Second Circuit has generally held that it is inappropriate for the district court to exercise supplemental jurisdiction."); *Wolfinger v. Consol. Edison Co. of N.Y.*, Inc., No. 17-CV-1710, 2018 WL 3637964, at *12 (E.D.N.Y. July 31, 2018) ("Where a court dismisses all claims over which it has original jurisdiction, it may, in its discretion, decline to exercise supplemental jurisdiction over remaining claims." (citing 28 U.S.C. § 1367(c)(3))).

---

[7] Even if Officer Henleywarren had violated the plaintiff's constitutional rights, the plaintiff's *Monell* claim would still fail. The plaintiff asserts that the City of New York is liable for the act that forms the basis of his Section 1983 claims against Officer Henleywarren—her arrest of the plaintiff. A single incident of alleged wrongdoing by a non-policymaker, however, is not enough to sustain a Section 1983 claim against a municipality. *See Treadwell v. Cnty. of Putnam*, No. 14-CV-10137, 2016 WL 1268279, at *4 (S.D.N.Y. Mar. 30, 2016); *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870 (S.D.N.Y. 1992) (noting that a "municipal agency may not be held liable under § 1983 simply for the isolated unconstitutional acts of its employees")

## CONCLUSION

For these reasons, the plaintiff's federal claims are dismissed in their entirety with prejudice. The plaintiff has already amended his complaint four times (ECF Nos. 8, 9, 23, 32), and further amendment would be futile. The plaintiff's state law claims are dismissed without prejudice. The Clerk of Court is respectfully directed to enter judgement and close this case.

**SO ORDERED.**

                                                        s/Ann M. Donnelly
                                                        ANN M. DONNELLY
                                                        United States District Judge

Dated: Brooklyn, New York
        August 24, 2022